IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

CG TECHNOLOGY DEVELOPMENT, LLC,
INTERACTIVE GAMES LIMITED, and
INTERACTIVE GAMES LLC,
              Plaintiffs,

v.

FANDUEL, INC.,

              Defendant.

Civil Action No. 1:17-cv-01041-RGA

## MEMORANDUM OPINION

Daniel M. Silver, Alexandra M. Joyce, MCCARTER & ENGLISH, LLP, Wilmington, DE; Robert F. Shaffer (argued), Scott A. Allen, Abdul Ghani S. Hamadi, FINNEGAN, HENDERSON, FARABOW, GARRETT & DUNNER, LLP, Washington, DC;

    Attorneys for Plaintiffs

Kenneth L. Dorsney, MORRIS JAMES LLP, Wilmington, DE; Eric A. Buresh, Megan J. Redmond (argued), Carrie A. Bader, ERISE IP, P.A., Overland Park, KS;

    Attorneys for Defendant

March 5, 2020


**ANDREWS, U.S. DISTRICT JUDGE:**

Before the Court is Defendant's Rule 12(c) Motion for Judgment on the Pleadings. (D.I. 340). The Court has considered the parties' briefing. (D.I. 341, 348, 350). The Court heard oral argument on February 13, 2020. (D.I. 374).

## I. BACKGROUND

Plaintiffs filed this action on April 8, 2016 in the District of Nevada, eventually alleging infringement of twelve patents including U.S. Patent No. 8,771,058 ("the '058 patent"). (D.I. 31). The District of Nevada transferred the instant case to this Court on July 27, 2017. (D.I. 219). Defendant has been successful at invalidating asserted claims. (D.I. 341 at 1). Claim 6 of the '058 patent is the only remaining claim at issue.

The '058 patent is directed to determining game configurations on a mobile device based on the location of that device. ('058 patent, Abstract, col. 12:22-28, col. 60:2-28). Claim 6 is dependent on claim 1. The Patent Trial and Appeal Board found claim 1 invalid under § 103. (D.I. 341, Ex. A at 48). Claim 1 reads as follows:

> 1. A method comprising:
> determining a first location of a mobile gaming device;
> determining a first game configuration associated with the first location;
> generating, by a computer system, a first game outcome using the first game configuration;
> instructing a display screen of the mobile gaming device to display an indication of the first game outcome;
> determining a first payout associated with the first game outcome;
> crediting a player account with a first amount based on the first payout;
> determining a second location of the mobile gaming device, wherein the second location is different from the first location;
> determining a second game configuration associated with the second location, wherein the second game configuration is different from the first game configuration;
> generating, by the computer system, a second game outcome using the second game configuration;
> instructing the display screen of the mobile gaming device to display an indication of the second game outcome;
> determining a second payout associated with the second game outcome; and

1

crediting the player account with a second amount based on the second payout.

Claim 6 reads:

6. The method of 1, in which determining the first game configuration includes:
accessing a lookup table which contains an ordered list of locations and associated game configurations;
finding within the lookup table the first location; and
determining that the first game configuration is associated with the first location.

At claim construction, I determined that "lookup table" means "an array or matrix of data that contains items that are searched." (D.I. 337 at 4).

## II. LEGAL STANDARD

### A. Rule 12(c)

A motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) is reviewed under the same standard as a Rule 12(b)(6) motion to dismiss when the Rule 12(c) motion alleges that the plaintiff failed to state a claim upon which relief can be granted. *See Turbe v. Gov't of the Virgin Islands*, 938 F.2d 427, 428 (3d Cir. 1991); *Revell v. Port Auth.*, 598 F.3d 128, 134 (3d Cir. 2010). The court must accept the factual allegations in the complaint and take them in the light most favorable to the non-moving party. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Christopher v. Harbury*, 536 U.S. 403, 406 (2002). "When there are well-ple[d] factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). The court must "draw on its judicial experience and common sense" to make the determination. *See id.* In ruling on a motion for judgment on the pleadings, the court is generally limited to the pleadings. *Mele v. Fed. Reserve Bank of N.Y.*, 359 F.3d 251, 257 (3d Cir. 2004). The court may, however, consider documents incorporated into the pleadings and those that are in the public record. *Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993).

### B. 35 U.S.C. § 101

Section 101 of the Patent Act defines patent-eligible subject matter. It provides: "Whoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title." 35 U.S.C. § 101. The Supreme Court has recognized an implicit exception for three categories of subject matter not eligible for patentability—laws of nature, natural phenomena, and abstract ideas. *Alice Corp. Pty. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2354 (2014). The purpose of these carveouts is to protect the "basic tools of scientific and technological work." *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 132 S. Ct. 1289, 1293 (2012). "[A] process is not unpatentable simply because it contains a law of nature or a mathematical algorithm," as "an application of a law of nature or mathematical formula to a known structure or process may well be deserving of patent protection." *Id.* at 1293–94 (cleaned up). "[T]o transform an unpatentable law of nature into a patent-eligible application of such a law, one must do more than simply state the law of nature while adding the words 'apply it.'" *Id.* at 1294 (emphasis omitted).

The Supreme Court reaffirmed the framework laid out in *Mayo* "for distinguishing patents that claim laws of nature, natural phenomena, and abstract ideas from those that claim patent-eligible applications of those concepts." *Alice*, 134 S. Ct. at 2355. First, the court must determine whether the claims are drawn to a patent-ineligible concept. *Id.* If the answer is yes, the court must look to "the elements of the claim both individually and as an 'ordered combination'" to see if there is an "'inventive concept'—*i.e.*, an element or combination of elements that is 'sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself.'" *Id.* (alteration in original). "A claim that

3

recites an abstract idea must include 'additional features' to ensure that the [claim] is more than a drafting effort designed to monopolize the [abstract idea]." *Id.* at 2357. Further, "the prohibition against patenting abstract ideas cannot be circumvented by attempting to limit the use of [the idea] to a particular technological environment." *Id.* at 2358 (quoting *Bilski v. Kappos*, 561 U.S. 593, 610-11 (2010)). Thus, "the mere recitation of a generic computer cannot transform a patent-ineligible abstract idea into a patent-eligible invention." *Id.* For this second step, the machine-or-transformation test can be a "useful clue," although it is not determinative. *Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 716 (Fed. Cir. 2014).

"Whether a claim is drawn to patent-eligible subject matter under § 101 is an issue of law," and "is a matter of both claim construction and statutory construction." *In re Bilski*, 545 F.3d 943, 951 (Fed. Cir. 2008), *aff'd sub nom. Bilski v. Kappos*, 561 U.S. 593 (2010). "Claim construction is a question of law . . . ." *In re Nuijten*, 500 F.3d 1346, 1352 (Fed. Cir. 2007). At *Alice* step two, however, "[w]hether something is well-understood, routine, and conventional to a skilled artisan at the time of the patent is a factual determination." *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1369 (Fed. Cir. 2018).

## III. DISCUSSION

### A. Law of the Case

"The law-of-the-case doctrine generally provides that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Musacchio v. United States*, 136 S. Ct. 709, 716 (2016) (cleaned up). Plaintiffs argue that the law-of-the-case doctrine applies here because the Nevada court already decided that the claims of the '058 patent are not directed to a patent-ineligible abstract idea. (D.I. 348 at 1). Plaintiffs

4

contend that this should end the § 101 analysis and that I should deny Defendant's motion without further consideration. (*Id.*).

In Plaintiffs' associated case against Bwin.Party, the Nevada court determined that representative claim 19 of the '058 patent was not abstract and therefore denied Bwin.Party's motion to dismiss under § 101 ("Nevada I"). *CG Tech. Dev., LLC v. Bwin.Party (USA), Inc.*, 2016 WL 6089696, at *4-5 (D. Nev. Oct. 18, 2016). Plaintiffs argue that because the instant case was consolidated with the *Bwin.Party* case, this Court is bound by the Nevada I decision. (D.I. 348 at 2). I do not agree. The Nevada court consolidated the related cases for pretrial purposes after it issued the Nevada I decision. *See CG Tech. Dev., LLC v. FanDuel, Inc.*, Case No. 2:16-cv-00801-RCJ-VCF, D.I. 92 (D. Nev. Dec. 12, 2016). That consolidation does not mean a previous decision in one case (*Bwin.Party*) retroactively applies to the other consolidated cases.

Plaintiffs further argue that because, after the consolidation, the Nevada court again determined that claim 19 was not abstract ("Nevada II"), the consolidated cases are therefore bound by that decision. (D.I. 374 at 32:12-17). This argument fails because of the posture of the Nevada II decision, which denied Bwin.Party's motion for reconsideration of the Nevada I decision. *CG Tech. Dev., LLC v. Bwin.Party (USA), Inc.*, Case No. 2:16-cv-00871-RCJ-VCF, D.I. 63 (D. Nev. Jan. 4, 2017). In the Nevada II decision, the district court affirmed its Nevada I decision that denied Bwin.Party's motion to dismiss under § 101. *Id.* The Nevada II decision did not address any of the consolidated cases or mention that the *Bwin.Party* case had been consolidated with others in the interim period. *Id.* The Nevada II decision was not entered on the consolidated docket, but rather on that of the *Bwin.Party* case. Neither the Nevada I decision

5

nor the Nevada II decision are part of the "same case" as the instant case. The law-of-the-case doctrine does not apply.

## B. Abstract Idea

To distinguish patents that claim ineligible concepts "from those that claim patent-eligible applications of those concepts . . . we [first] determine whether the claims at issue are directed to [an abstract idea]." *Alice*, 134 S. Ct. at 2355. "The 'abstract ideas' category embodies 'the longstanding rule that an idea of itself is not patentable.'" *Id.* (quoting *Gottschalk v. Benson*, 409 U.S. 63, 67 (1972)). "The Supreme Court has not established a definitive rule to determine what constitutes an 'abstract idea' sufficient to satisfy the first step of the *Mayo/Alice* inquiry." *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1334 (Fed. Cir. 2016). The Supreme Court has recognized, however, that "fundamental economic practice[s]," *Bilski*, 561 U.S. at 611, "method[s] of organizing human activity," *Alice*, 134 S. Ct. at 2356, and mathematical algorithms, *Benson*, 409 U.S. at 64, are abstract ideas. In navigating the parameters of such categories, courts have generally sought to "compare claims at issue to those claims already found to be directed to an abstract idea in previous cases." *Enfish*, 822 F.3d at 1334. "[S]ome improvements in computer-related technology when appropriately claimed are undoubtedly not abstract." *Id.* at 1335. "[I]n determining whether the claims are directed to an abstract idea, we must be careful to avoid oversimplifying the claims because '[a]t some level, all inventions . . . embody, use, reflect, rest upon, or apply laws of nature, natural phenomena, or abstract ideas.'" *In re TLI Commc'ns LLC Patent Litig.*, 823 F.3d 607, 611 (Fed. Cir. 2016) (alterations in original) (quoting *Alice*, 134 S. Ct. at 2354).

Defendant asserts that claim 6 of the '058 patent is directed to an abstract idea because it "falls within the category of 'method[s] of organizing human activity.'" (D.I. 341 at 4).

6

Plaintiffs respond that claim 6 is not abstract because it is a specific improvement of the "operation of a mobile gaming device and the way it displays game configurations to an end user." (D.I. 348 at 8). For the following reasons, I determine that claim 6 of the '058 patent is directed to the abstract idea of "determining game configuration based on location."

Claim 6 of the '058 patent is a method claim that depends on independent claim 1. The method embodies the basic concept of determining game configuration based on the location of a mobile device. The steps of the method can be summarized as follows: (1) determining the location of a mobile gaming device ('058 patent, col. 60:3); (2) using a lookup table to determine the game configuration associated with that location (*id.* col. 60:47-51); and (3) implementing that game configuration (*id.* col. 60:6-14). These are basic steps of determining the configuration of a game based on the location of a mobile device, a method of organizing human activity.

Plaintiffs argue that claim 6 is not directed to an abstract idea because it "recites an improvement that alters the operation [of] traditional mobile gaming devices in a very specific way using specific data structures." (D.I. 348 at 9). To support this argument, Plaintiffs rely on cases where the Federal Circuit has found "similar" inventions non-abstract and patentable. (*Id.*). Plaintiffs point to *Enfish*, where the Federal Circuit determined that claims which focused on "an improvement to computer functionality itself, not on . . . tasks for which a computer is used in its ordinary capacity," were not abstract under *Alice*. 822 F.3d at 1336. Plaintiffs contend that claim 6 is similar in that it teaches an improvement to a traditional gaming system because it forces the gaming devices to "function differently based on the determined geofencing." (D.I. 348 at 9). The claims in *Enfish*, however, are not similar to claim 6. In *Enfish*, the claims were "specifically directed to a self-referential table for a computer database"

that is designed to "improve the way a computer stores and retrieves data in memory." 822 F.3d at 1337, 1339 (emphasis omitted). Rather than improving the function of a computer itself, claim 6 employs a generic data structure, a lookup table, to determine the game configuration associated with a location.

Plaintiffs also rely on *SRI International, Inc. v. Cisco Systems, Inc.*, 930 F.3d 1295 (Fed. Cir. 2019). In that case, the Federal Circuit found the claims, which taught a specific technique of using network monitors to identify intruders into the network, to be "directed to an improvement in computer network technology" and therefore not abstract. *SRI International*, 930 F.3d at 1303. The Federal Circuit distinguished the claims at issue in *SRI International* from those in *Electric Power Group, LLC v. Alstom S.A.*, 830 F.3d 1350 (Fed. Cir. 2016): "The *Electric Power* claims were drawn to using computers as tools to solve a power grid problem, rather than improving the functionality of computers and computer networks themselves" like the claims in *SRI International*. *Id.* at 1304. The claims at issue in *Electric Power* were directed to "[a] method of detecting events on an interconnected electric power grid in real time over a wide area and automatically analyzing the events on the interconnected electric power grid." *Electric Power*, 830 F.3d at 1351. The Federal Circuit determined that those claims were focused "on the combination of [] abstract-idea processes. The advance [the claims] purport to make is a process of gathering and analyzing information of a specified content, then displaying the results, and not any particular assertedly inventive technology for performing those functions." *Id.* at 1354. Thus, the Federal Circuit determined that the claims were directed to an abstract idea. *Id.*

Claim 6 is similar to the claims in *Electric Power*, not to those in *SRI International*. Like the *Electric Power* claims, claim 6 is directed to "the combination of [] abstract idea processes."

8

*Id.* Determining the location of a mobile gaming device, determining the game configuration associated with that location, and implementing that game configuration are each "independently abstract ideas that use computers as tools." *Id.*

Plaintiffs further argue that *McRO, Inc. v. Bandai Namco Games America, Inc.*, 837 F.3d 1299 (Fed. Cir. 2016) supports their argument that claim 6 is patentable. (D.I. 348 at 10). In that case, the Federal Circuit held that the claims at issue were directed to a "specific asserted improvement in computer animation." *McRO*, 387 F.3d at 1314. Because the patent "incorporat[ed] the specific features of the rules as claim limitations," the Federal Circuit found that the claims were "limited to a specific process for automatically animating characters using particular information and techniques" and were therefore not directed to patent-ineligible subject matter. *Id.* at 1316. Plaintiffs argue that the lookup table of claim 6 is similar "specific structure" to that in *McRO*. (D.I. 348 at 10). I disagree. The "specific structure" in *McRO* was the combined order of the specific, subjective rules that were the means of automating lip synchronization. *McRO*, 387 F.3d at 1315. Claim 6, however, merely uses a generic data structure, a lookup table, "as a tool to automate conventional activity." *Id.* at 1314. Claim 6 describes searching a data structure in an ordinary fashion to find the game configuration associated with a location.

Therefore, claim 6 of the '058 patent is directed to the abstract idea of "determining game configuration based on location."

**C. Inventive Concept**

The decision that a patent is directed to an abstract idea "does not render the subject matter ineligible." *Internet Patents Corp. v. Active Network, Inc.*, 790 F.3d 1343, 1346 (Fed. Cir. 2015). Having decided that claim 6 is directed to an abstract idea, the Court must next

9

"determine whether the [claim does] significantly more than simply describe the abstract method." *Ultramercial*, 772 F.3d at 715. Since "a known idea, or one that is routine and conventional, is not inventive in patent terms," this analysis "favors inquiries analogous to those undertaken for determination of patentable invention." *Internet Patents*, 790 F.3d at 1346. Indeed, the Federal Circuit has noted that the two stages of the *Alice* two-step inquiry "are plainly related" and "involve overlapping scrutiny of the content of the claims . . . ." *Elec. Power Grp.*, 830 F.3d at 1353. Furthermore, neither "[a] simple instruction to apply an abstract idea on a computer," nor "claiming the improved speed or efficiency inherent with applying the abstract idea on a computer" satisfies the requirement of an "inventive concept." *Intellectual Ventures I LLC v. Capital One Bank (USA)*, 792 F.3d 1363, 1367 (Fed. Cir. 2015); *see also Bancorp Servs., LLC v. Sun Life Assurance Co. of Can.*, 687 F.3d 1266, 1278 (Fed. Cir. 2012) ("[T]he fact that the required calculations could be performed more efficiently via a computer does not materially alter the patent eligibility of the claimed subject matter.").

Plaintiff argues that claim 6 of the '058 patent has an inventive concept because it provides a solution "to the real-world need to address the implications of differing jurisdictions and their effect on permitted game configurations." (D.I. 348 at 12-13). At oral argument, Plaintiff pointed to *Bascom Global Internet Services, Inc. v. AT&T Mobility LLC*, 827 F.3d 1341 (Fed. Cir. 2016) to support the notion that there can be an inventive concept as long as there is a "nonconventional, nonroutine arrangement of what would otherwise be considered conventional and routine limitations." (D.I. 374 at 38:24, 39:2-7). In *Bascom*, the Federal Circuit determined that the claims at issue contained an inventive concept "in the non-conventional and non-generic arrangement of known, conventional pieces." *Bascom*, 827 F.3d at 1350. The patent in *Bascom* taught an improvement to internet content filtering that "could be adapted to many different

10

users' preferences while also installed remotely in a single location." *Id.* The Federal Circuit determined that the "patent describe[d] how its particular arrangement of elements is a technical improvement over prior art ways of filtering such content" rather than the claims merely instructing that the abstract idea of filtering be carried out by generic computer components. *Id.*

Claim 6 of the '058 patent, however, does not have a "particular arrangement of elements" that creates an inventive concept. The limitations of claim 6 instead teach the basic steps for using a conventional lookup table.

The specification of the '058 patent identifies a lookup table as an "example" of "a computer data structure [that] may be used to keep a record" of game configurations "in different locations." ('058 patent, col. 6:7-12). At claim construction, the parties agreed that the term "lookup table" has a plain and ordinary meaning understood by those of skill in the art at the time of the patent, which has a priority date of February 15, 2007. (D.I. 337 at 4; D.I. 31-10 at 1). To resolve this meaning, I turned to the definition of "lookup table" in the Computer Desktop Encyclopedia, Version 20.4 (2007). (*Id.*). I determined that "lookup table" means "an array or matrix of data that contains items that are searched." (*Id.*).[1] The fact that the patent does not specifically define a lookup table but instead refers to it as an example of a data structure that may be used, and the fact that the plain and ordinary meaning of "lookup table" was readily discerned from an encyclopedia entry, demonstrate that a lookup table is a conventional and well-known data structure. A lookup table itself is not an inventive concept.

In claim 6, the lookup table is also used in a conventional way; it is searched to find the game configuration associated with a location. Searching a lookup table used to store game configurations associated with locations is not an inventive concept sufficient to transform a

---

[1] This usage is similar to that in the 2002 Microsoft Computer Dictionary (D.I. 306-1 at 419 of 445): "a previously constructed table of values."

11

patent-ineligible abstract idea into an eligible one. *See BSG Tech LLC v. Buyseasons, Inc.*, 899 F.3d 1281, 1290–91 (Fed. Cir. 2018) ("If a claim's only 'inventive concept' is the application of an abstract idea using conventional and well-understood techniques, the claim has not been transformed into a patent-eligible application of an abstract idea."); *Berkheimer*, 881 F.3d at 1370 (holding that the claim limitations "amount to no more than performing the abstract idea of parsing and comparing data with conventional computer components" and thus lacked an inventive concept). Thus, viewed separately or as an ordered combination, the elements of claim 6 do not recite an inventive concept, and cannot transform the abstract idea into a patent-eligible application.

## IV. CONCLUSION

Defendant gambled with a Rule 12(c) motion and won the jackpot. For the foregoing reasons, the Court GRANTS Defendant's Motion for Judgment on the Pleadings (D.I. 340). An accompanying order will issue.